ALCOA STEAMSHIP COMPANY, Inc., Claimant, Appellant,

v.

Antero PEREZ RODRIGUEZ, Libelant, Appellee.

No. 6787.

United States Court of Appeals First Circuit.

Heard Feb. 9, 1967.

Decided April 20, 1967.

---

Antonio M. Bird, San Juan, P. R., with whom J. Ward O'Neill, Francis X. Byrn, New York City, Hartzell, Fernande & Novas, San Juan, P. R., and Haight, Gardner, Poor & Havens, New York City, were on brief, for appellant.

Harvey B. Nachman, San Juan, P. R., with whom Nachman & Feldstein, San Juan, P. R., was on brief, for appellee.

Before ALDRICH, Chief Judge, and MARIS [*] and COFFIN, Circuit Judges.

MARIS, Circuit Judge.

The libelant, Antero Perez Rodriguez, employed as a longshoreman by Alcoa Steamship Company, sustained injuries on one of Alcoa's vessels which it was operating in the navigable waters of the Commonwealth of Puerto Rico. The libelant was awarded compensation by the State Insurance Fund under the Puerto Rico Workmen's Accident Compensation Act.[1] He then brought suit in rem in the United States District Court for the District of Puerto Rico against Alcoa's vessel alleging that the respondent vessel "had breached its duty and warranty to provide a seaworthy vessel" by reason of which he was injured and he prayed for a decree awarding him damages against the vessel.[2] Alcoa, as claimant of the vessel, stipulated that the libelant was precipitated into the lower hold of the vessel from a ladder when the bolts of the ladder parted from the hatch wall which caused libelant's injuries and Alcoa agreed that $53,000 was the reasonable value of the damages sustained by libelant. Accordingly the only question submitted to the district court for its determination was whether the libelant was barred from bringing this action by section 20 of the Puerto Rico Workmen's Accident Compensation Act, 11 L.P.R.A. § 21.

That section provides:

"When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only remedy against the employer; but in case of accident to,.

---

[*] By designation.

[1] Act of April 18, 1935, No. 45, 11 L.P.R.A. § 1 et seq.

[2] Alcoa filed a claim of ownership, posted a bond and the vessel was released.

or disease or death of, the workmen or employees not entitled to compensation under this chapter, the liability of the employer is, and shall continue to be, the same as if this chapter did not exist."

The district court held that the action was not barred by Section 20 and entered a judgment in favor of the libelant for $53,000. This appeal by Alcoa followed.

■ On this appeal Alcoa contends that the district court erred in not following the prior decisions of this court holding that a longshoreman sustaining injuries while unloading his employer's vessel on navigable waters within the territorial limits of Puerto Rico may not maintain an action for unseaworthiness against his employer's vessel when his employer is covered by the Puerto Rico Workmen's Accident Compensation Act. We agree.

In Guerrido v. Alcoa Steamship Co., 1 Cir., 1956, 234 F.2d 349, we had occasion to consider the impact of Congressional enactments upon the Spanish maritime law of Puerto Rico and held that it was the intent of Congress, in giving the Puerto Rico Legislature legislative power over Puerto Rico waters, that the general rules of maritime law as understood in the United States should follow the flag to Puerto Rico waters except to the extent that these rules were rendered locally inapplicable either because they were not designed to apply to Puerto Rico waters or because of inconsistent Puerto Rico legislation. The issue presented in the *Guerrido* case was whether a longshoreman injured in the territorial waters of Puerto Rico could sue a third party vessel owner by reason of the unseaworthiness of the vessel. We adhered to our holding in Lastra v. New York & Porto Rico S.S. Co., 1 Cir. 1924, 2 F.2d 812, that the Puerto Rico Workmen's Accident Compensation Act applied to maritime workers. Since section 31 of that Act, 11 L.P.R.A. § 32, recognized the right to an action against a third party based on other existing law, we held that in an action by the longshoreman against the vessel owner who was not his employer the local law was not inconsistent with the federal maritime law. We concluded, therefore, that the longshoreman could maintain an action under the federal maritime law against the third party shipowner based upon the unseaworthiness of the vessel.

In Fonseca v. Prann, 1 Cir. 1960, 282 F.2d 153, cert. den. 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822, we were faced with the question whether a maritime worker could bring suit under the federal maritime law against his employer and, in view of the exclusive provisions of the local compensation act, we answered that question in the negative.

In Waterman Steamship Corporation v. Rodriguez, 1 Cir. 1961, 290 F.2d 175, 179, which involved an action by a longshoreman employed by a stevedoring company which had been brought against a shipowner for injuries sustained aboard the vessel while lying in the port of San Juan, we adhered to our prior view, saying:

"In the Fonseca case we held that the Puerto Rico Workmen's Accident Compensation Act had rendered the general maritime law of unseaworthiness inapplicable to Puerto Rican waters so far as suits by injured seamen against their employers are concerned. In the Guerrido case, however, we had pointed out that Puerto Rican legislation, such as the Workmen's Accident Compensation Act, could not supplant a general rule of maritime law which Congress in the exercise of its constitutional power has expressly made applicable to Puerto Rican waters in common with all other American waters. It was after quoting this caveat in the Guerrido case and in the light of it that we said in the Fonseca case that 'we are not aware that Congress has ever taken action to make the general maritime law of unseaworthiness apply in those waters' [282 F.2d 153, 156–157], the statement upon which the defendant bases its present contention. We went on to point out in the Fonseca case that

if Congress should take such affirmative action it would have the effect of supplanting the Workmen's Accident Compensation Act by the general law of unseaworthiness so far as concerns the rights of seamen injured in Puerto Rican waters against their employers.

"As we demonstrated in the Guerrido case, the general maritime law of unseaworthiness had become applicable in Puerto Rican waters without express enactment by Congress, subject to being supplanted in whole or in part by Puerto Rican legislation. And since Congress has not made the law of unseaworthiness expressly applicable, to the exclusion of the Workmen's Accident Compensation Act, to seamen injured in Puerto Rican waters suing their employers we held in the Fonseca case that the Compensation Act did have the effect of supplanting in such cases the maritime law of unseaworthiness which is otherwise in force in Puerto Rican waters. We were, of course, dealing only with the right claimed by the seaman in that case to sue his employer for damages by reason of the unseaworthiness of the vessel upon which he was injured in Puerto Rican waters. The right of a seaman or longshoreman, such as the present plaintiff, to base a suit against another than his employer upon the maritime law of unseaworthiness was not involved in that case and our discussion had no relation to it."

■ We adhere to the views expressed in our prior opinion to the effect that the Puerto Rico Workmen's Accident Compensation Act has, within the area of its applicability,[3] displaced the remedies of the maritime law, including the federal Longshoremen's Act[4] and provides the sole remedy of a Puerto Rico longshore-man against his employer for injuries sustained in the course of his employment.[5] We have been referred to no Puerto Rico statute or congressional enactment which has modified our holding in the Guerrido case that the local workmen's compensation act supplanted the law of unseaworthiness in respect to locally employed maritime workers. Moreover, particularly in view of the unique status of Puerto Rico, we think that if and when Congress deems it advisable to extend law to Puerto Rico which would otherwise have been inapplicable to that Commonwealth, it will do so in clear and explicit terms. See Royal Indemnity Co. v. Puerto Rico Cement Corp., 1 Cir. 1944, 142 F.2d 237; Defense Bases Act, 42 U.S.C.A. § 1651 et seq.

We conclude that the district court erred in holding that the present action was not barred by section 20 of the Puerto Rico Workmen's Accident Compensation Act.

The libelant argues, however, that the exclusive provisions of section 20 of the Puerto Rico Workmen's Accident Compensation Act, which immunizes an employer against suit by his injured employee, must now be more narrowly construed in the light of Reed v. The Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed. 2d 448, which, he asserts, upholds the right of a longshoreman injured in the course of his employment on a vessel to sue the owner of the vessel for damages based on the unseaworthiness of the vessel, even though the owner of the vessel is his employer and has paid him compensation under the Longshoremen's and Harbor Workers' Compensation Act and in spite of the specific provision of that Act making it the longshoreman's exclusive remedy against his employer. We find it difficult to determine the intended

3. As to one of the limits of the area of the Act's applicability see the opinion of this court filed this day in Alcoa Steamship Company Inc., et al. v. Velez, 376 F.2d 521.

4. Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.

5. See Inter Island Shipping Corporation v. Industrial Commission of Puerto Rico, Dec. 18, 1963, P.R.R. ; Cortijo Walker v. Puerto Rico Water Resources Authority, Dec. 18, 1964, P.R.R. . ; Marcano Torres v. Puerto Rico Water Resources Authority, Jan. 20, 1965, P.R.R. .

scope of the *Yaka* case. For the fact is that the longshoreman's suit in that case was not brought against his employer but rather against the vessel on which he was injured, which was in fact owned by a third party, Waterman Steamship Corporation. It was the shipowner which brought in the longshoreman's employer, a bareboat charterer of the vessel, as a third party defendant alleged to be liable over to the shipowner under the indemnity terms of the charter. Reed v. The Yaka, D.C.Pa.1960, 183 F.Supp. 69, 77. It was on this theory, under the doctrine of Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp. 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, that the district court entered the judgment in favor of the longshoreman which the Supreme Court ultimately affirmed.

In any event it is clear that in the present case we need not determine the exact scope of the *Yaka* decision. For in that case the Supreme Court was dealing with the exclusive remedy provision of the federal Longshoremen's and Harbor Workers' Compensation Act as to the construction of which it is the final authority. Here, however, we are not dealing with a federal statute but rather with a statute of the Commonwealth of Puerto Rico as to the meaning and scope of which it is not the federal courts, but rather the courts of Puerto Rico, which have the final determination. In making that determination the views of the Supreme Court in the *Yaka* case with respect to the federal act might well be persuasive but would surely not be binding upon the Puerto Rico courts.

Our examination of the decisions of the Supreme Court of Puerto Rico under the Workmen's Accident Compensation Act compels the conclusion that the Act is intended to and does provide the exclusive remedy against his employer for a covered employee who is injured in the course of his employment. United Porto Rican Sugar Co. v. District Court, 1933, 44 P.R.R. 904; Onna v. The Texas Co.,

1945, 64 P.R.R. 497; DeJesus v. Osorio, 1946, 65 P.R.R. 601; Inter Island Shipping Corp. v. Industrial Commission of Puerto Rico, Dec. 18, 1963,          P.R.R.          ; Cortijo Walker v. Puerto Rico Water Resources Authority, Dec. 18, 1964,          P.R.R.          In the *Inter Island Shipping Corp.* case, which involved a seaman, the Supreme Court of Puerto Rico reaffirmed the exclusive character of the Act and did not refer to the *Yaka* case even though the latter had been handed down some months previously.

We come then to the question whether the libelant may nonetheless maintain the libel in rem against the vessel for unseaworthiness as if it were a third party on the ground that it breached a warranty to be a seaworthy vessel. This theory was rejected by our court in Ruiz Pichirilo v. Maysonet Guzman, 1961, 290 F.2d 812, reversed on other grounds, Guzman v. Pichirilo, 1962, 369 U.S. 698,[6] 82 S.Ct. 1095, 8 L.Ed.2d 205. We held that the "concept of a ship as an individual may have an aura of romance befitting the lore of the sea, but to regard it as an entity having separate responsibilities independent of the primary legal responsibility of some human actor has little rational appeal." Nor did we find that the doctrine of liability for unseaworthiness should lead to a different result. We stated "It is true that one speaks of unseaworthiness 'of the vessel' and of 'liability without fault,' but this cannot obscure the fact that liability depends upon a legal obligation growing out of a relationship between individuals: the injured party and the one charged with preventing the injury." [290 F.2d pp. 814–815]. See also, Noel v. Isbrantsen Company, 4 Cir. 1961, 287 F.2d 783, 785–786.

Accordingly, since, as we have shown, section 20 of the Puerto Rico Workmen's Accident Compensation Act bars a suit by the libelant against the vessel owner on the ground of unseaworthiness, the present action in rem cannot be maintained solely against the

6. This precise question was not reached by the Supreme Court in Guzman v. Pichirilo, 1962, 369 U.S. 698, 82 S.Ct. 1095, 8

L.Ed.2d 205, or in Reed v. Steamship Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448.

vessel as though it were a third party independently liable for the libelant's injuries.

The decree of the district court will be reversed and the cause remanded with directions to dismiss the libel.