**ALCOA STEAMSHIP COMPANY, Inc.,
et al., Plaintiffs, Appellants,**

v.

**Ulpiano VELEZ, Manager, Puerto Rico
State Insurance Fund, Defendant,
Appellee.**

**No. 6703.**

United States Court of Appeals
First Circuit.

April 20, 1967.

---

Jose L. Novas, Nicolas Jimenez, San Juan, P. R., and William E. Wright, New Orleans, La., with whom J. Ward O'Neill, New York City, Rodolfo Sequeira, Hartzell, Fernandez & Novas, San Juan, P. R., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., Haight, Gardner, Poor & Havens, New York City, and Rodriguez Ema & Rodriguez Ramon, San Juan, P. R., were on brief, for appellants.

Peter Ortiz, Asst. Sol. Gen., J. F. Rodriguez Rivera, Acting Sol. Gen., for Commonwealth of Puerto Rico, with whom J. B. Fernandez Badillo, Sol. Gen., was on brief, for appellee.

Before ALDRICH, Chief Judge, and MARIS * and McENTEE, Circuit Judges.

MARIS, Circuit Judge.

The question presented on this appeal is whether the Puerto Rico Workmen's Accident Compensation Act, 11 L. P.R.A. § 1 et seq., is applicable to seamen who have been employed in the continental United States and who are working temporarily in the navigable territorial waters of Puerto Rico as crew-members of foreign[1] owned vessels when they are injured.

The plaintiffs Alcoa Steamship Company, Inc., A. H. Bull Steamship Company, Inc., Lykes Brothers Steamship Company, Inc., and Waterman Steamship Corporation, brought suit in January 1962 against the Manager of the Puerto Rico State Insurance Fund in the United States District Court for the District of Puerto Rico alleging that the defendant in July 1961 had advised each of them that in view of the decision of this court in Fonseca v. Prann, 1960, 282 F.2d 153, he understood that all accidents suffered by members of crews of vessels in the

---

* Sitting by designation.

1. The term "foreign" is used in the sense that these vessels are owned by corporations incorporated in various States of the Union other than Puerto Rico.

navigable waters of Puerto Rico were covered by the Puerto Rico Workmen's Accident Compensation Act and, therefore, he was serving notice of a new classification and premium assessment with respect to seamen employed by them working in the navigable waters of Puerto Rico.

The plaintiffs refused to file payroll reports pursuant to the Act or to pay the premiums assessed against them, contending that defendant had no authority to make the demand upon them. Their refusal was based on the grounds that the seamen involved were not residents of Puerto Rico and had not been employed there, but were employed by plaintiffs pursuant to federal maritime law under shipping articles executed at continental United States ports. The plaintiffs alleged that their refusal to comply with the defendant's demands subjected them to actions as uninsured employers and to liens by successful claimants against their property, 11 L.P.R.A. § 16, and also subjected them to penalties for failure to insure their seamen, 11 L.P.R.A. § 18, and accordingly they prayed for a judgment declaring that their liability for accidental injury or death suffered by their seamen while in the course of employment within the navigable waters of Puerto Rico arises under federal maritime law and that the local workmen's accident compensation act does not apply.

The parties stipulated that in cases of accidental injury to or death of any seaman employed by plaintiffs aboard their vessels occurring within the navigable waters of Puerto Rico the matter would be referred to the United States Public Health Service as it would upon such an occurrence happening in any port of the United States. It was also stipulated that during 1965 the intervenor Sea-Land Service, Inc., and the plaintiff Waterman Steamship Corporation paid, under protest, the premiums demanded by the defendant and filed petitions for review before the Industrial Commission of Puerto Rico, which at the time of trial were still pending.

The District Court construed our statement in Fonseca v. Prann, 282 F.2d 153, 157, that the "Congress intended to clothe the Government of Puerto Rico with power to provide for the application of its workmen's compensation act to injuries suffered by employees on local navigable waters" to include maritime workers coming from ports outside Puerto Rico aboard vessels belonging to owners outside Puerto Rico. The Court concluded that, since that power was delegated by Congress to Puerto Rico, the only remaining question was whether the Puerto Rico Legislature intended to include such foreign seamen within the coverage of the compensation act and that this question could adequately be resolved under the procedure provided by the Puerto Rico Workmen's Accident Compensation Act. Accordingly, the district court withheld consideration of the merits and dismissed the complaint. This appeal by the plaintiffs followed.

The plaintiffs contend that the district court abused its discretion in dismissing the complaint. It is argued that our holding in Fonseca v. Prann does not support the broad interpretation given that case by the defendant and by the district court. We agree.

In Fonseca v. Prann the sole question for consideration was whether a Puerto Rico seaman could sue his employer, who was insured under the Puerto Rico Workmen's Accident Compensation Act, for negligence under the Jones Act and for unseaworthiness under the general maritime law to recover for injuries sustained while at work within the territorial limits of Puerto Rico. We held that Section 20 of the Act, 11 L.P.R.A. § 21, barred such an action. In that case we had no occasion to deal with seamen who had been employed outside the jurisdiction of Puerto Rico to work on vessels owned by non-resident employers and whose only contact with Puerto Rico was when their vessel entered the waters of Puerto Rico for a temporary visit in the course of its voyage. As we pointed out in Guerrido v. Alcoa Steamship Co., 1 Cir. 1956, 234 F.2d 349, and in Waterman

Steamship Corporation v. Rodriguez, 1 Cir. 1961, 290 F.2d 175, 179, Puerto Rican legislation, such as the Puerto Rico Workmen's Accident Compensation Act, could not supplant a general rule of maritime law which Congress in the exercise of its constitutional power had expressly made applicable to Puerto Rican waters in common with all other American waters.

■■ But what we had said in the *Fonseca* case was not intended to mean that the Congress had delegated to the Legislature of Puerto Rico power in the general field of admiralty and maritime law to apply its local compensation act to seamen who are actually employed under federal maritime laws and to require foreign vessel owners who are responsible to their maritime workers under those laws for accidental injury or death, or who have provided them with compensation for those casualties, to insure these workers also under the local Puerto Rico statute. Indeed, the delegation of such power would radically change the characteristic feature of the general maritime law that it follows the flag of the vessel[2] and would seriously interfere with the proper uniform application of that law in its international and interstate relations. Southern P. Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed 1086; Knickerbocker Ice Co. v. Stewart, 1920, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834; State of Washington v. Dawson & Co., 1924, 264 U.S. 219, 44 S.Ct. 302, 68 L. Ed. 753.

■ In Alcoa v. Perez Rodriguez, filed this day, 376 F.2d 35, which involved a Puerto Rican maritime worker compensated for injuries under the provisions of the Puerto Rico Workmen's Accident Compensation Act, we adhere to our prior view to the effect that the Puerto Rico statute has, within the area of its applicability, displaced the remedies of the maritime law and provided the sole remedy of a Puerto Rican longshoreman against his insured employer for injuries sustained in the course of his employment. But this is the extent to which the Legislature of Puerto Rico is empowered to supersede the rules of the general maritime law in Puerto Rico waters. And, furthermore, we think that this is in conformity with the spirit of the Puerto Rico Workmen's Accident Compensation Act. By the Act of May 16, 1958, No. 16, p. 19, the Legislature enacted an exemption as to technical personnel protected by laws of other jurisdictions. 11 L.P.R.A. § 28a. In the statement of motives, inter alia, appearing in the Act appears the following:

"By express provision of the workmen's accident compensation statutes, or by judicial order, the laws in the continent generally have extraterritorial effect, so that when workmen are hired in the various states, they are subject to the Workmen's Compensation Act of the State where they are hired. We are facing the same situation as regards the employment of technical personnel imported from the United States of America.

"Since our statute establishes compulsory insurance, the firms employing such technical personnel would be bound to maintain double insurance in connection therewith.

"It is convenient to industry in general, and to the employers affected, that a reasonable standard be established to prevent duplication in the payment of such premiums." [See note, 11 L.P.R.A. § 28a.]

Here is a clearly expressed intention by the Legislature of Puerto Rico that its Workmen's Accident Compensation Act shall not be used as a vehicle to require the maintenance of duplicating compensation insurance by an employer.

Moreover, the Supreme Court of Puerto Rico has itself applied the generally accepted law of the flag by construing the Puerto Rico Workmen's Accident Compensation Act to cover injuries to Puerto Rican maritime workers occurring in

---

2. Lauritzen v. Larsen, 1953, 345 U.S. 571, 584–585, 73 S.Ct. 921, 97 L.Ed. 1254; Guerrido v. Alcoa Steamship Co., 1 Cir., 1956, 234 F.2d 349, 354.

waters away from Puerto Rico. Inter Island Shipping Corporation v. Industrial Commission of Puerto Rico, Dec. 18, 1963, P.R.R. In that case the contract with the maritime worker had been negotiated in Puerto Rico and the ship belonged to a corporation organized under the laws of Puerto Rico. The Court held that the injury, although it occurred outside of Puerto Rican waters, was insured under the local accident compensation act, stating:

"The Industrial Commission in declaring itself without jurisdiction in this case, applied the criterion that our Workmen's Accident Compensation Act does not cover an accident occurring outside our territorial limits. The fact that the employer in this case paid premiums also computed on the wages paid to the employer's maritime crew when it worked outside of Puerto Rico is not argued. The power of the Legislature of Puerto Rico to provide medical assistance and hospitalization to our migrating laborers who are injured outside of Puerto Rico if they return to our country, Act No. 77 of June 23, 1958 is not argued. There is evidence that the benefits of our workmen's compensation has been extended to some of our officials called to work outside of Puerto Rico for accidents suffered outside our territory. The concept of 'extraterritoriality' carries impliedly with it the invasion of the juridical sovereignty of another state, city or political body. When said invasion is not produced, it can hardly be considered that the application of a law has been given extraterritorial effect."

We conclude that the Puerto Rico Workmen's Accident Compensation Act cannot be applied to seamen injured in Puerto Rican waters on an American vessel owned by a corporation of a state other than Puerto Rico where the contract of employment was not entered into in Puerto Rico. Such seamen's rights under the Jones Act, the maritime law of unseaworthiness, and maintenance and cure attach upon their employment and follow them into Puerto Rican waters.

The judgment of the district court will be reversed and the case will be remanded to the district court for further proceedings not inconsistent with this opinion.