Angela **FELICIANO**, etc., et al., Plaintiffs, Appellees,

v.

**COMPANIA TRASATLANTICA ESPANOLA, S. A.**, Defendant, Third-Party Plaintiff, Appellant,

v.

**INTERNATIONAL SHIPPING AGENCY, INC.**, et al., Third-Party Defendants, Appellees.

No. 7189.

United States Court of Appeals First Circuit.

June 10, 1969.

Vicente M. Ydrach, San Juan, P. R., with whom Hartzell, Fernandez, Novas & Ydrach, San Juan, P. R., was on the brief, for appellant.

Francisco Agrait Oliveras, San Juan, P. R., with whom Martinez-Munoz, Agrait Oliveras & Otero, San Juan, P. R., was on the brief, for International Shipping Agency, Inc. and Maryland Casualty Company, appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In this suit Angela Feliciano, acting for herself and her minor children, seeks to recover damages against the defendant shipowner for the loss of her concubine, one Martin Beltran, who met his death as the result of an accident that occurred aboard the defendant's ship. The deceased, one of a gang of longshoremen employed by an independent stevedoring contractor, was engaged in handling cargo on the ship at the port of San Juan when the accident occurred. The suit is predicated upon negligence and unseaworthiness. A similar action brought by the lawful wife on her own behalf and on behalf of the legitimate minor children was before this court, on appeal, in Compania Trasatlantica Espanola, S. A. v. Melendez Torres, 358 F.2d 209 (1st Cir. 1966).

As in the earlier case the defendant shipowner impleaded the stevedoring contractor and its insurer as third party defendants seeking indemnity in the amount of any judgment obtained against it in the principal action. It asserts that if it has any liability to the plaintiffs as a result of this accident it is because of the stevedoring company's breach of its contractual warranty of workmanlike service to the shipowner in that it failed to perform its operations in a safe and proper manner. The third party defendants countered with a motion for summary judgment on the ground that the stevedoring company was an insured employer under the Workmen's Compensation Act of Puerto Rico and as such, the only remedy against it is the compensation provided in that Act.[1]

The district court granted summary judgment and dismissed the third party complaint. This appeal raises the interesting question of whether under the facts of this case the shipowner's indemnity rights against the stevedoring company are cut off by the Workmen's Compensation Act of Puerto Rico. We note that both the district court and the appellees construe our earlier opinion to mean that all claims arising out of this accident depend entirely upon Puerto Rican law. In support of that position they rely principally on the following language in the opinion:

"Since plaintiffs' intestate was not a seaman and his death was caused by injuries sustained within the territorial waters of Puerto Rico, this case does not come within the purview of either of these statutes. There being no applicable federal statute, it is undisputed that plaintiffs' right of recovery here depends entirely upon

---

1. The Workmen's Compensation issue was not raised in the earlier case.

Puerto Rican law." *Melendez Torres, supra,* at 212.

Suffice it to say that this interpretation reads altogether too much into our holding in that case. Taken in context we think it is abundantly clear that the phrase "plaintiffs' right of recovery" refers to the right of the deceased's wife and the minor children of the marriage, not to the right of the shipowner. Moreover, we do not regard the shipowner's right of indemnity against the stevedore as a claim arising out of this accident. This third party claim is separate and distinct from that asserted in the principal action and is governed by entirely different legal principles.

In the leading case of Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Court held that where a stevedore contracted to perform stevedoring services for a shipowner, it impliedly warranted that the services would be performed in a competent and safe manner and that the shipowner could recover against the stevedore in an action for indemnification based on a breach of implied warranty of workmanlike performance. Negligence or unseaworthiness is not the basis of the shipowner's remedy against the stevedore. Its remedy is strictly contractual in nature, existing independently of tort. See also Crumady v. The J. H. Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S. Ct. 438, 2 L.Ed.2d 491 (1958). We hold that the *Ryan* doctrine which was recently reaffirmed by the Supreme Court in Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (April 1, 1969) governs the rights of the shipowner against the stevedore in the instant case.

■■ There can be little doubt that a stevedoring contract with a shipowner is maritime in nature and that the breach of an implied warranty to perform services in a workmanlike fashion is governed by federal maritime law, not state law. Italia Societa Per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 319, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); American Stevedores v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947); Koninklyke Nederlandsche Stoomboot Maalschappy, N. V. Royal Netherlands S. S. Co. v. Strachan Shipping Co., 301 F.2d 741 (5th Cir.), cert. denied, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230 (1962); Booth S. S. Co. v. Meier & Oelhaf Co., 262 F.2d 310 (2d Cir. 1958). See also Fireman's Fund American Ins. Co. v. Boston Harbor Marina, 406 F.2d 917 (1st Cir. 1969). Moreover, we think that this is just the kind of situation in which a uniform federal admiralty rule is desirable. Since the ship visits many ports its indemnity rights should remain constant. The warranty which the stevedore owes when he goes aboard a vessel to perform services is plainly for the benefit of the vessel and the vessel may recover over. Crumady v. The J. H. Fisser, *supra* at 428, 79 S.Ct. 445. Thus, it is of no consequence here that the tort which triggered the contractual obligation was created by Puerto Rican law; and the earlier case of *Melendez Torres,* which held that the rights of plaintiffs in the principal action were governed by Puerto Rican law is completely reconcilable with our holding here.

■ The appellees argue that when admiralty adopts a state right of action it must enforce that right as an integrated whole with whatever conditions and limitations the creating state has attached. They then point to Section 20 of the Puerto Rico Workmen's Compensation Act, 11 LPRA § 21 which states that the right to compensation shall be the only remedy against an insured employer under the act.[2] The short answer

2. "When an employer insures his workmen or employees in accordance with this chapter, the right herein established to obtain compensation shall be the only rem-

edy against the employer; but in case of accident to, or disease or death of, the workmen or employees not entitled to com-

to this contention is that the shipowner's right of indemnity against the stevedoring company is not derivative from plaintiffs' claim against the shipowner in the principal action. It is completely independent of the principal action, based purely on damage resulting from a breach of contract. *Koninklyke, supra* at 743. As stated in *Ryan, supra* 350 U.S. at 134, 76 S.Ct. at 237, "The shipowner's action is not changed from one for a breach of contract to one of tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." See also *Italia, supra* 376 U.S. at 319, 84 S.Ct. at 751. Like the proceeding in Guerrido v. Alcoa S. S. Co., 234 F.2d 349, 358 (1st Cir. 1956), the third party action here is "a suit in admiralty in a federal court seeking to enforce a right given by the federal maritime law." In Alcoa S. S. Co. v. Perez Rodriguez, 376 F.2d 35, 37 (1st Cir.), cert. denied, 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219 (1967), interpreting *Guerrido* we said,

> "that it was the intent of Congress, in giving the Puerto Rico Legislature legislative power over Puerto Rico waters, that the general rules of maritime law as understood in the United States should follow the flag to Puerto Rico waters except to the extent that these rules were rendered locally inapplicable either because they were not designed to apply to Puerto Rico waters or because of inconsistent Puerto Rico legislation."

pensation under this chapter, the liability of the employer is, and shall continue to be, the same as if this chapter did not exist."

3. Vda. de Andino v. Autoridad de las Fuentes Fluviales de Puerto Rico, 93 DPR

In Alcoa S. S. Co. v. Velez, 376 F.2d 521, 524 (1st Cir. 1967), we held that the Puerto Rico Workmen's Compensation statute

> "has, within the area of its applicability, displaced the remedies of the maritime law and provided the sole remedy of a Puerto Rican longshoreman against his insured employer for injuries sustained in the course of his employment. But this is the extent to which the Legislature of Puerto Rico is empowered to supersede the rules of the general maritime law in Puerto Rico waters."

Also, in *Velez* we reaffirmed our earlier holdings that "Puerto Rican legislation, such as the Puerto Rico Workmen's Accident Compensation Act, could not supplant a general rule of maritime law which Congress in the exercise of its constitutional power had expressly made applicable to Puerto Rican waters in common with all other American waters."

In view of our holding that the indemnity contract between the shipowner and the stevedoring company in this third party action is a maritime contract, we find it unnecessary to consider the cases upon which the stevedoring company and its insurer rely in support of their contention that the shipowner's right of indemnity here is subject to Puerto Rican law.[3] We merely note that none of these cases are maritime in nature nor in any of them was the question of contractual indemnity involved.

Reversed.

170 (1966); Eliezer Marcano v. Autoridad de las Fuentes Fluviales de Puerto Rico, 91 DPR 654 (1965) and Cortijo Walker v. Autoridad de las Fuentes Fluviales de Puerto Rico, 91 DPR 574 (1964).