Francisco Torres RAMOS, Plaintiff, Appellant,

v.

BEAUREGARD, INC., et al., Defendants, Appellees.

Francisco Torres RAMOS, Plaintiff, Appellant,

v.

S. S. DETROIT, Defendant, Appellee.

Nos. 7262, 7526.

United States Court of Appeals, First Circuit.

Heard Feb. 2, 1970.

Decided April 7, 1970.

Gustavo A. Gelpi, San Juan, P. R., with whom Harvey B. Nachman and Nachman, Feldstein, Laffitte & Smith, San Juan, P. R., were on brief, for plaintiff-appellant.

Rafael O. Fernandez, San Juan, P. R., with whom Hartzell, Fernandez, Novas & Ydrach, San Juan, P. R., was on brief, for defendants-appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellant was injured while working as a longshoreman aboard the SS Detroit, a vessel owned by appellee Beauregard, Inc. and operated by appellant's employer, Sea-Land Services, Inc. under a demise charter. He sought recovery from both Beauregard and Sea-Land, alleging that his injuries were caused by the unseaworthiness of the vessel. Sea-Land moved for summary judgment on the grounds that workmen's compensation was the exclusive remedy of a Puerto Rican worker against his own employer. Beauregard also moved for summary judgment, arguing that the shipowner was not liable for conditions arising after a demise charter. Both motions were granted. Appellant then filed a libel *in rem* against the SS Detroit. This libel was subsequently dismissed because of the lack of any *in personam* claim to support a lien against the vessel.

In this court, appellant apparently concedes the correctness of summary judgment for his employer, Sea-Land. Fonseca v. Prann, 282 F.2d 153 (1st Cir. 1960), cert. denied 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 822 (1961); Alcoa Steamship Co. v. Perez Rodriguez, 376 F.2d 35 (1st Cir. 1967), cert. denied, 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219 (1967). He protests, however, the dismissals of his libel *in personam* and his libel *in rem*. Recognizing that the rulings of the district court were amply supported by precedent, he urges us, however, to reexamine our holding in Vitozi v. Balboa Steamship Co., 163 F.2d 286 (1st Cir., 1947) and Ruiz Pichirilo v. Maysonet Guzman, 290 F.2d 812 (1st Cir. 1961), rev'd on other grounds, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962) that a shipowner is not liable for unseaworthy conditions arising after he has parted with control over his vessel under a demise charter. Appellant also urges us to overturn the rule in this Circuit that no lien against a vessel arises in the absence of an *in personam* claim. Ruiz Pichirilo v. Maysonet Guzman, *supra*; Alcoa Steamship Co. v. Perez Rodriguez, *supra*. We decline appellant's invitation.

One who seeks to overcome the principle of *stare decisis* should be prepared to offer compelling reasons which outweigh the public interest in the stability of legal doctrine. Appellant's reasons are not of that gravity. The Supreme Court has expressly reserved decision on both of the doctrines which appellant attacks. Reed v. S.S. Yaka, 373 U.S. 410, 411 n. 1, 83 S.Ct. 1349, 10 L. Ed.2d 448 (1963). It is of course true, as appellant argues, that a shipowner's duty to provide a seaworthy vessel cannot be delegated or avoided by contract. Thus a shipowner cannot escape liability by delegating partial control of his ves-

sel to an independent contractor. Alaska Steamship Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954). But the duty to provide a seaworthy vessel is grounded in personal obligation. We would reduce this notion of personal obligation to pure fiction if we extended it to include conditions arising during a demise charter, when the owner has no right to control and no opportunity to correct defects. Ruiz Pichirilo v. Maysonet Guzman, *supra*, 290 F.2d at 815; *See* Cannella v. Lykes Bros. Steamship Co., 174 F.2d 794, 795 (2d Cir.), cert. denied, 338 U.S. 859, 70 S.Ct. 102, 94 L.Ed. 526 (1949); Grillea v. United States, 229 F.2d 687, 689 (2d Cir. 1956).

 When neither the owner nor the demise charterer is personally liable for unseaworthiness, we see no basis for permitting a libel *in rem* against the vessel. Such a proceeding is "merely a procedural device of admiralty for more readily effectuating the liability of some jural person who has breached some personal obligation, * * *" Reed v. Steamship Yaka, 307 F.2d 203, 205 (3d Cir. 1962), rev'd on other grounds, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963). Thus there can be no *in rem* liability absent *in personam* liability. We are aware of the contrary ruling in Grillea v. United States, 232 F.2d 919 (2d Cir. 1956), but we find that rule no more persuasive now than we did in *Ruiz Pichirilo, supra,* 290 F.2d at 815. In *Grillea,* Judge Learned Hand seemed to view the device of a libel *in rem* as a means of imposing a limited liability without fault on an otherwise immune shipowner. 232 F.2d at 924. However, liability without fault in ordinary legal parlance means liability without negligence, not liability without breach of a personal obligation owed the injured party. *Cf.* Skovgaard v. M/V Tungus, 252 F.2d 14, 17 (3d Cir. 1957), aff'd, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959); Compania Trasatlantica Espanola, S.A. v. Melendez Torres, 358 F.2d 209, 213 (1st Cir. 1966); Grigsby v.

Coastal Marine Service of Texas, Inc., 412 F.2d 1011, 1026–1029 (5th Cir. 1969). In this case, where the shipowner has breached no duty owed the injured party, he should be free of all liability, whether limited or unlimited.

 Appellant also urges that the shipowner should be liable under the Civil Code of Puerto Rico, 31 L.P.R.A. § 5141. His reasoning is based on the "saving to suitors" clause, 28 U.S.C. § 1333, which permits litigants with maritime claims to seek whatever remedies are provided by common law. Under Puerto Rican law, a prime contractor can be sued for the negligence of an independent contractor in conducting work which is inherently dangerous. Barrientos v. Government of the Capitol (P.R. Sup.Ct., June 27, 1969); *see* Prosser, Torts § 70, p. 483 (3d ed. 1964). Therefore, appellant concludes, he should be able to sue the shipowner for faults committed by the charterer. We doubt whether the doctrine announced in *Barrientos* has any application to this case; a shipowner who parts with his vessel under a demise charter is more nearly analogous to a lessor than to a principal contractor. Moreover, appellant misconceives the meaning of the "saving to suitors" clause. Section 1333 is remedial. It provides that suitors who hold claims which may be enforced by a libel *in personam* may also bring suit in a common law court. Black & Gilmore, The Law of Admiralty § 1–13. If, however, the claim fails under the law of admiralty, it cannot be revived by invoking local law. Chelentis v. Luckenbach Steamship Co., 247 U.S. 372, 384, 38 S. Ct. 501, 62 L.Ed. 1171 (1918); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 407, 408–411, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Jansson v. Swedish American Line, 185 F.2d 212, 216–217 (1st Cir. 1950).

We have considered appellant's constitutional claims, and find them to be without merit.

Affirmed.